1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

8

9

10

11

12

13

14

| | |
|---|---|
| DONGGUAN AOXUN PLASTIC PRODUCTS CO., LTD. and SHENZHEN MIGAO TRADING CO., LTD d/b/a MI GAO,<br><br>        Plaintiffs,<br><br>v.<br><br>GUANGDONG WILLING TECHNOLOGY CORPORATION,<br><br>        Defendant | Case No.: 2:25-cv-2119<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF INVALIDITY, UNENFORCEABILITY, NON-INFRINGEMENT, AND FOR RELATED STATE AND ANTITRUST CLAIMS**<br><br>**DEMAND FOR A JURY TRIAL** |

15

16

17

18

19

20

21

22

23

24

**Complaint**

Plaintiffs Dongguan Aoxun Plastic Products Co., Ltd., and Shenzhen Migao Trading Co., Ltd d/b/a MI GAO ("Plaintiffs"), by and through their undersigned counsel, brings this Complaint against Guangdong Willing Technology Corporation ("Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.     This is an action seeking relief arising from Defendant's bad-faith assertion of utility patent infringement against MI GAO through Amazon's Patent Evaluation Express ("APEX") procedure.

2.     This action seeks: (i) a declaratory judgment of non-infringement of U.S. Patent No. 12,349,244 (the "'244 Patent"), pursuant to 28 U.S.C. §§ 2201-2202 and Title 35; (ii) a declaratory judgment that one or more claims of the '244 Patent are invalid under 35 U.S.C. §§ 101 et seq., including §§ 102 and/or 103; (iii) damages and equitable relief for tortious interference with contractual relationships and/or business expectancy under applicable law; (iv) relief for Defendant's bad-faith patent enforcement in violation of the Washington Patent Troll Prevention Act (RCW 19.350 et seq.) and the Washington Consumer Protection Act (RCW 19.86 et seq.); and (v) antitrust and unfair-competition relief arising from Defendant's sham enforcement and Walker Process fraud. A true and correct copy of the '244 Patent is attached as Exhibit 1.

3.     An actual, justiciable controversy exists. Defendant Guangdong Willing Technology Corporation initiated an APEX proceeding against Plaintiff SHENZHEN MIGAO TRADING CO., LTD d/b/a MI GAO, alleging that MI GAO's product identified by ASIN B0DRHWT27P (the "Non-Infringing Warming Mat") infringes at least Claim 1 of the '244 Patent. A true and correct copy of the Amazon APEX notice received by MI GAO is attached hereto as Exhibit 2.

4.     Defendant's APEX assertion threatens removal of MI GAO's legitimate Amazon

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-CV-2119

listing and disrupts Plaintiffs' business operations, causing ongoing harm to sales, goodwill, and marketplace standing.

5.    The Non-Infringing Warming Mat does not meet one or more limitations of each asserted claim of the '244 Patent and therefore cannot infringe. In addition, the asserted claims are invalid for failure to satisfy one or more statutory requirements, including novelty and non-obviousness.

6.    Defendant's wrongful assertion and resultant platform disruption have intentionally and improperly interfered with Plaintiffs' contractual relations and business expectancies with Amazon and consumers. Judgment should be entered in MI GAO's favor.

## PARTIES

7.    Plaintiff DONGGUAN AOXUN PLASTIC PRODUCTS CO., LTD. ("Aoxun"), is a Chinese corporation with its principal place of business at Room 102, No. 1 Dadun Road, Dalong, Xiegang Town, Dongguan, Guangdong, China.

8.    Aoxun is the manufacturer of the Non-Infringing Warming Mat in Defendant's APEX complaint.

9.    Plaintiff SHENZHEN MIGAO TRADING CO., LTD doing business as MI GAO, is a Chinese corporation with its principal place of business at 2405G11, Huarong Building, No. 178 Mintian Road, Fuan Community, Futian Street, Futian District, Shenzhen, Guangdong, China.

10.    MI GAO operates the Amazon.com storefront under the name "MI GAO" (Seller ID: A3RU95HSADFJ2), through which the Non-Infringing Warming Mat is offered for sale to consumers in the United States.

11.    Upon information and belief, Defendant GUANGDONG WILLING TECHNOLOGY CORPORATION is a Chinese corporation with its principal place of business at

No. 2 Yanting Road, Shuikou Street, Huicheng District, Huizhou, Guangdong, China.

## JURISDICTION AND VENUE

12.   This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq. It also arises under the Washington Patent Troll Prevention Act ("PTPA"), RCW 19.350 et seq., and the Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq.

13.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state law claims, as those claims form part of the same case or controversy as the declaratory judgment claims.

14.   Plaintiffs have standing because a real and immediate controversy exists between Plaintiffs and Defendant. Defendant Guangdong Willing Technology Corporation initiated an Amazon Patent Evaluation Express ("APEX") proceeding, Case ID 18641707461, against MI GAO, alleging infringement of U.S. Patent No. 12,349,244 by MI GAO's product identified by ASIN B0DRHWT27P.

15.   This APEX complaint threatens removal of MI GAO's legitimate Amazon listing, has already disrupted MI GAO's business operations, and creates a reasonable apprehension of continued enforcement of the '244 Patent against MI GAO.

16.   Moreover, because Aoxun is the manufacturer and supplier of MI GAO's Non-Infringing Warming Mat, Defendant's APEX complaint likewise threatens and adversely affects Aoxun's commercial interests, disrupting its established business relationship with MI GAO and causing further harm.

17.   This Court has personal jurisdiction over Defendant because Defendant purposefully

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 2:25-cv-2119

directed its conduct at the State of Washington by submitting its infringement complaint through Amazon's APEX procedure, which is administered from Amazon's principal place of business in Seattle, Washington. Defendant thereby availed itself of the privilege of conducting activities in Washington and consented to the jurisdiction and venue of the federal and state courts located in King County, Seattle, Washington, as expressly provided in the governing APEX Agreement. Defendant's acts were expressly aimed at this District and caused foreseeable harm to MI GAO's commercial interests here.

18.   In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2) because Defendant is not a resident of the United States, Plaintiffs' claims arise out of Defendant's contacts with the United States as a whole, and the exercise of jurisdiction is consistent with the Constitution and laws of the United States.

19.   Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to this action occurred here. In particular, Defendant's initiation of the APEX procedure, governed by an agreement selecting the laws of Washington and the jurisdiction of the courts located in King County, Seattle, directly caused the harm giving rise to this suit.

**FACTUAL BACKGROUND**

**A. The Non-Infringing Warming Mat**

20.   MI GAO conducts business through its Amazon.com storefront "MI GAO," offering household warming mats to U.S. consumers.

21.   Among MI GAO's products is a silicone warming mat for food identified by ASIN B0DRHWT27P (the "Non-Infringing Warming Mat" or "Warming Mat"). The Warming Mat is a foldable countertop heating mat lawfully manufactured by Aoxun and sold by MI GAO.

22. On or about October 14, 2025, Defendant Guangdong Willing Technology Corporation initiated an Amazon Patent Evaluation Express ("APEX") proceeding alleging that the Non-Infringing Warming Mat infringes U.S. Patent No. 12,349,244 (the "'244 Patent").

23. As of the filing of this Complaint, Amazon has set an APEX response deadline and the Non-Infringing Warming Mat remains at risk of imminent delisting, threatening MI GAO's principal U.S. sales channel.

24. Amazon is MI GAO's primary U.S. marketplace. Defendant's baseless APEX assertion threatens exclusion of MI GAO's lawful Warming Mat, causing immediate and irreparable harm to sales, goodwill, and marketplace ranking.

25. Upon information and belief, Defendant filed its APEX complaint without obtaining or testing a sample of the Non-Infringing Warming Mat and without a reasonable pre-filing analysis.

**B. U.S. Patent No. 12,349,244**

26. The application for the '244 Patent was filed on November 7, 2024, and claims priority to Chinese Patent Application No. 202321013145.6, filed on April 27, 2023. The '244 Patent issued on July 1, 2025.

27. The '244 Patent lists Jingnong Ye, Shifa Luo, and Kunhuan Feng as the inventors, and is assigned to Guangdong Willing Technology Corporation.

28. The '244 Patent is titled "Flexible heat preservation board with heating wire encapsulated therein." See Exhibit 1.

29. Claim 1 is the sole independent claim of the '244 Patent and recites:

A flexible heat preservation board, comprising:

a heating pad, provided with a power supplier, wherein a first side of the

COMPLAINT FOR DECLARATORY JUDGMENT
Case No.: 2:25-cv-2119

heating pad is defined with a groove, the groove is arranged in a winding

pattern, and the first side of the heating pad is also arranged with a plurality

of projections having an equal height;

a heating wire, wherein both ends of the heating wire are connected to the power

supplier; and

a liquid adhesive;

wherein a first inner surface of the groove is provided with a first protrusion, a

second inner surface of the groove is provided with a second protrusion, and the

first protrusion and the second protrusion face each other; a distance between a

first edge of the first protrusion and a second edge of the second protrusion is

less than a diameter of the heating wire, a bottom surface of the groove, a lower

surface of the first protrusion and a lower surface of second protrusion define an

open accommodating space for receiving the heating wire; a first gap is formed

between the lower surface of the first protrusion and a first outer surface of the

heating wire; a second gap is formed between the lower surface of the second

protrusion and a second outer surface of the heating wire; the liquid adhesive

encapsulates the first protrusion, the second protrusion, and the heating wire in

the groove; and both the heating pad and the heating wire are flexible.

*See* Exhibit 1, Claim 1.

## C.    Defendant's Bad-Faith Enforcement

30. On April 25, 2025, the China National Intellectual Property Administration

("CNIPA") issued a Decision on Request for Invalidation (No. 586063), declaring that Chinese

Patent No. 202321013145.6, to which the '244 Patent claims foreign priority as identified on the

1    face of the '244 Patent, was invalid in its entirety on the ground of obviousness.

2    31. The CNIPA's decision was based on multiple prior art references, including
3    CN218338294U,   CN202617378U,   CN218387961U,   CN218791904U,   CN201533416U,
4    CN108047800A,   CN217744141U,   CN209497620U,   as   well   as   the   PCT   application
5    WO2024/222924A1 corresponding to the '244 Patent.

6    32. Based on the same or substantially similar prior art references, the '244 Patent should
7    likewise be deemed invalid under 35 U.S.C. § 103 for obviousness.

8    33. The CNIPA's decision identified Guangdong Willing Technology Corporation as the
9    patent owner of the invalidated Chinese patent. Accordingly, Defendant was fully aware that
10    CNIPA had invalidated its priority Chinese patent and that the same prior art renders the '244
11    Patent invalid.

12    34. Defendant was therefore fully aware that the '244 Patent is invalid in view of prior
13    art    including    CN218338294U,    CN202617378U,    CN218387961U,    CN218791904U,
14    CN201533416U,   CN108047800A,   CN217744141U,   and   CN209497620U.   Nevertheless,
15    Defendant willfully engaged in bad-faith enforcement actions against Plaintiffs' Non-Infringing
16    Warming Mat under the guise of asserting the '244 Patent.

17    35. On October 14, 2025 (Pacific Time), Defendant Guangdong Willing Technology
18    Corporation submitted to Amazon a Patent Owner-Supplied Information form initiating an APEX
19    complaint under the '244 Patent against MI GAO's product listings identified by ASIN
20    B0DRHWT27P. *See* Exhibit 2.

21    36. On October 16, 2025 (Pacific Time), Aoxun's counsel sent a formal communication
22    letter to Guangdong Willing Technology Corporation, providing a detailed non-infringement
23    analysis and requesting that the patent owner promptly withdraw the pending APEX complaint.

24    COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-CV-2119

Aoxun's counsel also expressed willingness to engage in good-faith discussions to resolve the matter amicably. *See* Exhibit 3.

37.  Despite having received clear notice and supporting analysis demonstrating that the Non-Infringing Warming Mat does not meet the limitations of the asserted patent, Guangdong Willing Technology Corporation failed to withdraw or amend its APEX complaint. Instead, it continued to pursue the enforcement action with knowledge of MI GAO's non-infringing products and without performing a reasonable pre-filing investigation. As of the filing of this lawsuit, Aoxun has received no indication that the APEX complaint has been withdrawn or modified.

**COUNT I**
**Declaratory Judgment of Non-Infringement of U.S. Patent No. 12,349,244**

38.  Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

39.  An actual and justiciable controversy exists between Plaintiffs and Defendant concerning whether Plaintiffs' Non-Infringing Warming Mat infringes any valid and enforceable claim of the '244 Patent. Defendant's APEX complaint to Amazon alleging infringement has created a substantial and immediate dispute regarding Plaintiffs' rights to continue selling its product lawfully in the United States.

40.  Plaintiffs' Non-Infringing Warming Mat does not infringe, either directly, contributorily, or by inducement, literally or under the doctrine of equivalents, any valid and enforceable claim of the '244 Patent.

41.  The Non-Infringing Warming Mat lacks multiple limitations required by claim 1 of the '244 Patent.

42.  Specifically, the Non-Infringing Warming Mat at least does not include a "heating

pad provided with a power supplier," nor does it include the claimed structure in which "a first inner surface of the groove is provided with a first protrusion, a second inner surface of the groove is provided with a second protrusion, and the first protrusion and the second protrusion face each other; a distance between a first edge of the first protrusion and a second edge of the second protrusion is less than a diameter of the heating wire; a bottom surface of the groove, a lower surface of the first protrusion and a lower surface of the second protrusion define an open accommodating space for receiving the heating wire; a first gap is formed between the lower surface of the first protrusion and a first outer surface of the heating wire; a second gap is formed between the lower surface of the second protrusion and a second outer surface of the heating wire; the liquid adhesive encapsulates the first protrusion, the second protrusion, and the heating wire in the groove; and both the heating pad and the heating wire are flexible."

43.  As reflected in the Applicant's Response to Office Action dated April 28, 2025 (see Exhibit 4), the Examiner allowed the claims of the '244 Patent because the applicant distinguished the claimed invention from prior art references such as Gabbay (U.S. Patent Publication No. 2010/0116818 A1), Huang (U.S. Patent Publication No. 2006/0241730 A1), and Gehrmann (DE 19952718 A1). The applicant's arguments made during prosecution of the '244 Patent further confirm that the Non-Infringing Warming Mat is materially different from the subject matter claimed in claim 1 of the '244 Patent.

44.  Assuming arguendo that the '244 Patent were valid and enforceable, Plaintiffs' product still would not meet each and every limitation of any asserted claim. Each of the claimed elements, particularly at least the "power supplier," "first and second protrusions," and "liquid adhesive encapsulation," is either missing, materially different, or performs a distinct function inconsistent with the claim language.

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-cv-2119

45. A real and substantial controversy therefore exists between Plaintiffs and Defendant regarding infringement. Declaratory relief is appropriate and necessary to establish that the making, using, importing, offering for sale, and selling of Plaintiffs' Non-Infringing Warming Mat do not infringe any claim of the '244 Patent, whether directly or indirectly, literally or under the doctrine of equivalents.

**COUNT II**
**Declaratory Judgment of Patent Invalidity and Unenforceability of U.S. Patent No. 12,349,244**

46. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

47. An actual, continuing, and justiciable controversy exists between Plaintiffs and Defendant concerning the validity and enforceability of the '244 Patent, as evidenced by Defendant's APEX complaint to Amazon alleging infringement by Plaintiffs' Non-Infringing Warming Mat and seeking removal of Plaintiffs' product listings.

48. The '244 Patent is invalid for failure to meet the conditions of patentability and/or otherwise comply with one or more provisions of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, and 103.

49. Specifically, the claimed invention of the '244 Patent lacks novelty under 35 U.S.C. § 102 because substantially identical flexible heating pads and heat preservation boards had been publicly known, used, and/or sold in the United States and abroad prior to the earliest effective filing date of the '244 Patent.

50. The claimed invention of the '244 Patent is invalid under 35 U.S.C. §103 as obvious in view of multiple prior art references that disclose flexible heating structures substantially similar to those claimed in the '244 Patent. Such prior art includes, but is not limited to, Gabbay (U.S.

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-cv-2119

2010/0116818 A1), Huang (U.S. 2006/0241730 A1), and Gehrmann (DE 19952718 A1), as well as corresponding Chinese patents and publications such as CN218338294U, CN202617378U, CN218387961U, CN218791904U, CN201533416U, CN108047800A, CN217744141U, and CN209497620U. These references, individually or in combination, render the asserted claims of the '244 Patent obvious to a person of ordinary skill in the art.

51. Indeed, the CNIPA has already declared invalid in its entirety Chinese Patent No. 202321013145.6, to which the '244 Patent claims foreign priority as identified on the face of the '244 Patent, on the ground of obviousness, based on prior art including CN218338294U, CN202617378U, CN218387961U, CN218791904U, CN201533416U, CN108047800A, CN217744141U, and CN209497620U.

52. The CNIPA's decision identified the Defendant as the patent owner of Chinese Patent No. 202321013145.6. Accordingly, Defendant could not have been unaware that the '244 Patent, which claims foreign priority to that Chinese patent, was invalid in its entirety for obviousness based on the above prior art.

53. Nevertheless, with full knowledge of the invalidation of its priority Chinese patent, Defendant willfully engaged in bad-faith enforcement actions against Plaintiffs' Non-Infringing Warming Mat under the guise of asserting the invalid '244 Patent.

54. Additional publicly available heating pad products, predating the claimed invention, further demonstrate that the structural combination of a flexible pad, a groove receiving a heating wire, and an external power connection was well known and commonly used long before the filing of the '244 Patent.

55. The '244 Patent may also fail to meet the requirements of 35 U.S.C. § 112 because certain claimed terms, including "power supplier," are not clearly defined or adequately supported

in the specification, leaving the scope of the claims uncertain to a person of ordinary skill in the art.

56.   Defendant's assertion of the '244 Patent through the APEX procedure has caused immediate and ongoing harm to Plaintiffs by threatening removal of its legitimate product listings, disrupting sales operations, and damaging Plaintiffs' goodwill and marketplace standing.

57.   Plaintiffs therefore seek a declaratory judgment that all asserted claims of the '244 Patent are invalid for failure to satisfy the requirements of the Patent Act, including 35 U.S.C. §§ 101, 102, 103, and/or 112.

58.   Upon information and belief, Defendant and the named inventors were aware of the Gabbay, Huang, and Gehrmann references, as well as other preexisting heating pad technologies, before filing or prosecuting the application for the '244 Patent. Defendant's knowing failure to disclose such material information to the United States Patent and Trademark Office constitutes inequitable conduct and a misuse of the patent system. Accordingly, the '244 Patent is also unenforceable.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

59.   Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

60.   Under Washington law, the elements of a claim for tortious interference with a contractual relationship are: (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of that relationship; (3) intentional interference causing a breach, termination, or disruption of the relationship or expectancy; (4) interference for an improper purpose or by improper means; and (5) resulting damage. Tacoma Auto Mall, Inc. v.

Nissan North America, Inc., 279 P.3d 487, 498 (Wash. Ct. App. 2012).

61.  MI GAO has a valid and existing contractual relationship with Amazon, through which it sells its products under the MI GAO brand, including the Non-Infringing Warming Mat.

62.  Upon information and belief, Defendant knew of MI GAO's contractual relationship with Amazon and of MI GAO's dependence on the Amazon marketplace as its principal U.S. sales channel.

63.  Defendant intentionally interfered with that contractual relationship by submitting a materially false and bad-faith patent infringement complaint through Amazon's Patent Evaluation Express procedure, with the purpose of disrupting MI GAO's sales and excluding MI GAO as a lawful competitor.

64.  Although Amazon has not yet removed MI GAO's listing, Defendant's actions have substantially disrupted MI GAO's contractual and business relationship with Amazon by subjecting the listing to imminent risk of delisting, reducing visibility and sales performance, and damaging MI GAO's reputation with Amazon and consumers.

65.  Defendant's conduct constitutes improper interference carried out in bad faith and for an anticompetitive purpose, including to suppress legitimate market competition and coerce MI GAO into ceasing lawful sales.

66.  As a direct and proximate result of Defendant's interference, MI GAO has suffered and continue to suffer foreseeable damages, including lost sales opportunities, reduced product ranking, harm to goodwill, and costs incurred to mitigate the effects of Defendant's wrongful actions.

67.  Defendant's efforts to disrupt MI GAO's contractual and business relations through false and bad-faith patent assertions were and are unlawful and fraudulent.

68. Based on the same or similar wrongful conduct by Defendant, Aoxun's manufacturing and commercial operations involving the Non-Infringing Warming Mat have likewise been adversely affected by Defendant's false and bad-faith patent assertions. Defendant's improper conduct has wrongfully caused Aoxun's Non-Infringing Warming Mat to be accused of infringement, thereby interfering with Aoxun's existing contractual relationships and business expectancies with MI GAO and other customers.

69. By reason of Defendant's acts, Plaintiffs are entitled to equitable relief and damages in an amount to be proven at trial.

**COUNT IV**
**VIOLATION OF WASHINGTON PATENT TROLL PREVENTION ACT AND**
**CONSUMER PROTECTION ACT - RCW 19.350 et seq. AND RCW 19.86 et seq.**

70. Plaintiffs incorporate by reference and realleges all preceding paragraphs of this Complaint as if fully set forth herein.

71. Defendant has made a bad-faith assertion of utility patent infringement against MI GAO by filing a complaint through Amazon's Patent Evaluation Express ("APEX") procedure, alleging that Plaintiffs' Non-Infringing Warming Mat infringes the '244 Patent.

72. Defendant's APEX complaint, although not yet resulting in the formal removal of MI GAO's listing, has caused substantial commercial disruption, including a significant decline in sales, reduced product visibility, and reputational harm arising from the pending infringement notice.

73. Defendant's conduct constitutes a bad-faith assertion of patent infringement in violation of the Washington Patent Troll Prevention Act ("PTPA"), RCW 19.350 et seq., because Defendant asserted the '244 Patent without conducting a reasonable pre-filing investigation,

ignored clear evidence of non-infringement, and used the APEX procedure with the intent to coerce MI GAO into withdrawing lawful sales.

74.   Upon information and belief, Defendant has engaged in a pattern of similar bad-faith enforcement actions against multiple e-commerce sellers through the APEX process, evidencing a systematic strategy to suppress competition rather than to protect legitimate patent rights.

75.   Defendant's violations of the PTPA also constitute violations of the Washington Consumer Protection Act ("CPA"), RCW 19.86 et seq., which prohibits unfair or deceptive acts or practices in the conduct of trade or commerce. See RCW 19.350.030; RCW 19.86.090.

76.   Defendant's acts constitute unfair and deceptive business practices that threaten the public interest by undermining fair competition, discouraging innovation, and harming the integrity of e-commerce marketplaces that rely on good-faith participation in patent enforcement programs.

77.   Plaintiffs have suffered and continue to suffer injury as a result of Defendant's unlawful conduct, including loss of sales, harm to business goodwill, and expenses incurred in defending against Defendant's bad-faith assertions. Plaintiffs are entitled to relief under the PTPA and CPA, including actual damages, treble damages as permitted by law, reasonable attorneys' fees, and injunctive relief prohibiting Defendant from further asserting the '244 Patent in bad faith.

### COUNT V
### ATTEMPTED MONOPOLIZATION (15 U.S.C. § 2) - WALKER PROCESS SHERMAN ACT VIOLATION

78.   Plaintiffs re-allege and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

79.   The '244 Patent was procured by fraud on the United States Patent and Trademark Office ("USPTO"). Specifically, Defendant knowingly and willfully failed to disclose known prior

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-CV-2119

art and existing heating pad technologies that predated the claimed invention, including U.S. Patent Publication No. 2006/0241730 A1 ("Huang") and other substantially similar flexible heating pad designs.

80.   Upon information and belief, Defendant and the named inventors were aware of these prior disclosures during prosecution of the '244 Patent yet intentionally withheld them from the USPTO with the intent to deceive the Examiner and secure issuance of a patent that they knew or should have known was invalid.

81.   Defendant's knowing failure to disclose this material prior art, combined with its misleading characterization of the claimed "power supplier" and groove structure as novel and nonobvious, constitutes fraudulent procurement of the '244 Patent.

82.   After obtaining the '244 Patent through fraud on the USPTO, Defendant enforced it in bad faith by initiating a baseless APEX complaint against Plaintiffs' Non-Infringing Warming Mat, seeking to exclude Plaintiffs' products from the Amazon marketplace and to suppress lawful competition.

83.   Defendant's conduct constitutes predatory and anticompetitive behavior undertaken with the specific intent to monopolize the relevant market for flexible heating pad and warming mat products sold through major e-commerce platforms, including Amazon. The relevant market consists of flexible electric heating mats offered to U.S. consumers through such online marketplaces, which serve as the primary retail distribution channels for these goods.

84.   There exists a dangerous probability that Defendant could achieve monopoly power in this market through the exclusion of Plaintiffs and similarly situated competitors, given the dominant role of Amazon in U.S. online retail and the absence of reasonably interchangeable platforms offering equivalent consumer access.

COMPLAINT FOR DECLARATORY JUDGMENT
CASE NO.: 2:25-cv-2119

85.  As a direct and proximate result of Defendant's anticompetitive conduct, Plaintiffs have suffered and continues to suffer antitrust injury, including lost sales, harm to goodwill, and litigation expenses, while consumers face reduced product choice and diminished marketplace competition.

86.  Under Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172 (1965), Defendant's maintenance and enforcement of a patent obtained by fraud on the USPTO constitutes attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

87.  Plaintiffs are therefore entitled to recover its damages, including treble damages, reasonable attorneys' fees, and costs under the antitrust laws of the United States.

## COUNT VI
## SHAM ENFORCEMENT / ANTICOMPETITIVE CONDUCT

88.  Plaintiffs re-allege and incorporate by reference each and every allegation in the preceding paragraphs as though fully set forth herein.

89.  Defendant's assertion of the '244 Patent through Amazon's Patent Evaluation Express ("APEX") procedure constitutes sham enforcement undertaken for anticompetitive purposes.

90.  *In Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986 (9th Cir. 1979), the Ninth Circuit recognized that baseless patent enforcement may give rise to antitrust liability when a party employs such enforcement as a weapon to interfere directly with a competitor's business relationships. Likewise, in Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49 (1993), the Supreme Court articulated a two-part test for sham litigation or enforcement: first, the challenged action must be objectively baseless such that no reasonable litigant could realistically expect success on the merits; and second, the action must conceal a

subjective intent to interfere directly with a competitor's business relationships through the use of a governmental or quasi-governmental process as an anticompetitive weapon. This framework applies to non-judicial enforcement mechanisms such as Amazon's APEX process.

91.  Defendant's APEX complaint was objectively baseless because MI GAO's Non-Infringing Warming Mat lacks multiple limitations of claim 1 of the '244 Patent, including the required "power supplier" and "first and second protrusions." No reasonable patent owner could have expected to succeed on such an infringement allegation.

92.  Defendant's actions were subjectively intended to interfere with Plaintiffs' business by causing Amazon to delist or restrict Plaintiffs' products, thereby eliminating lawful competition and diverting marketplace sales. Defendant's use of Amazon's APEX process, rather than legitimate judicial proceedings, demonstrates its intent to weaponize the procedure as an anticompetitive tool.

93.  Defendant's sham enforcement constitutes predatory and exclusionary conduct in violation of Section 2 of the Sherman Act, undertaken with the specific intent to exclude Plaintiffs and similarly situated competitors from the relevant market for flexible heating pad and warming mat products sold through major e-commerce platforms, including Amazon.

94.  As a direct and proximate result of Defendant's sham enforcement, Plaintiffs have suffered and continues to suffer substantial damages, including lost sales, harm to goodwill, and litigation expenses, while consumers are harmed by reduced product choice and diminished competition.

95.  Plaintiffs are entitled to damages, treble damages under applicable antitrust laws, reasonable attorneys' fees, and injunctive relief prohibiting Defendant from further sham enforcement of the '244 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A.  Declaring that U.S. Patent No. 12,349,244 (the "'244 Patent") is invalid and/or unenforceable under the Patent Act.

B.  Declaring that Plaintiffs' Non-Infringing Warming Mat does not infringe any valid and enforceable claim of the '244 Patent, whether directly or indirectly, literally or under the doctrine of equivalents.

C.  Entering judgment that Defendant tortiously interfered with MI GAO's contractual relationship and business expectancy with Amazon.com, Inc.

D.  Entering judgment that Defendant's bad-faith assertion of patent infringement through APEX procedure violates the Washington Patent Troll Prevention Act (RCW 19.350 et seq.) and the Washington Consumer Protection Act (RCW 19.86 et seq.).

E.  Entering judgment that Defendant's conduct constitutes sham enforcement and attempted monopolization in violation of Section 2 of the Sherman Act, including Walker Process liability where proven.

F.  Ordering Defendant to withdraw, retract, and/or otherwise revoke its APEX complaint and any related communications submitted to Amazon concerning alleged infringement of the '244 Patent by the Non-Infringing Warming Mat, and to provide written notice of such withdrawal to Amazon and to MI GAO.

G.  Granting preliminary and permanent injunctive relief enjoining Defendant, its officers, agents, employees, affiliates, and all persons acting in concert with them from asserting or threatening to assert the '244 Patent against Plaintiffs' Non-Infringing Warming Mat through Amazon or any other third party.

H.   Ordering Defendant to file with the Court, and serve on Plaintiffs' counsel, within three (3) days of entry of injunctive relief, a sworn report confirming compliance.

I.   Awarding Plaintiffs damages sufficient to compensate for injuries proximately caused by Defendant's APEX enforcement, including lost sales opportunities, diminished product visibility and ranking, harm to goodwill and marketplace standing, and costs incurred to mitigate and respond, in amounts to be determined at trial.

J.   Awarding treble damages and reasonable attorneys' fees pursuant to RCW 19.86.090 for violations of the PTPA and CPA, and treble damages, fees, and costs available under federal antitrust law for Defendant's sham enforcement and, where proven, Walker Process fraud.

K.   Declaring this case exceptional and awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285.

L.   Awarding pre-judgment and post-judgment interest as permitted by law.

M.   Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

DATED:   October 28, 2025

By:    */s/ Yi Yi*  _____
Yi Yi (*Pro hac vice* to be filed)
California Bar No. 353482
LawMay P.C.
2108 N St., Ste.9124
Sacramento, CA 95816
M: 747-241-3130
yiyi@lawmayus.com


*/s/ Carl J. Marquardt*  _____
Carl J. Marquardt (WSBA No. 23257)
Law Office of Carl J. Marquardt PLLC
1126 34th Avenue, Suite 311
Seattle, WA 98122
Tel: (206) 388-4498
Email: carl@cjmpllc.com

*Attorneys for Plaintiffs*